COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chafin, Decker and AtLee
Argued at Richmond, Virginia


BRIGITTA HENDERSON

                                                        MEMORANDUM OPINION* BY
v.        Record No. 1402-17-2                          JUDGE MARLA GRAFF DECKER
                                                        MAY 15, 2018

WILLIAM TERRELLE HENDERSON


                    FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                    David E. Johnson, Judge

            James M. Goff, II (James M. Goff II, P.C., on brief), for appellant.

            Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.


        Brigitta Henderson (the wife) appeals a final order of the circuit court resolving equitable

distribution and support issues in the course of her divorce from William Terrelle Henderson (the

husband).[1]  On appeal, she challenges the circuit court's refusal to hear evidence on her claim of

after-discovered evidence.  The wife further contends that the equitable distribution award failed to

properly account for one of the husband's assets.  She also challenges the child and spousal support

awards, suggesting that the court erroneously calculated the parties' incomes and expenses.  For the

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The husband also noted an appeal to this Court from the final order.  See William
Terrelle Henderson v. Brigitta Henderson, No. 1364-17-2 (Va. Ct. App. Aug. 25, 2017).  These
two cases were joined for purposes of oral argument, but the Court resolves the appeals in
separate, simultaneously issued opinions.

reasons that follow, we affirm the circuit court's decision.[2]  Additionally, we deny the parties'

respective requests for attorney's fees and costs incurred on appeal.

## I.  BACKGROUND

The parties were married in 1999.  They had two children, a son born in 2002 and a

daughter born in 2006.  The husband was a professional athlete before and during the marriage but

retired shortly after their second child was born in 2006.  The wife worked early in the parties'

marriage but stopped working for a period of time after the birth of their first child in 2002.  She

returned to work in 2008.  The parties separated in 2014, due at least in part to the husband's

admitted infidelities.

The wife filed a bill of complaint seeking a divorce, child and spousal support, and equitable

distribution.  Following two evidentiary hearings, the court entered a final decree granting the

divorce, distributing the marital property, and awarding child and spousal support.

## II.  ANALYSIS

This appeal addresses certain aspects of the circuit court's equitable distribution, child

support, and spousal support awards.  The wife challenges the court's refusal to accept

after-discovered evidence regarding proceeds from a civil suit, which she contends impacted both

the equitable distribution and support awards.  Regarding the equitable distribution, the wife argues

that the court erred by failing to classify and value the husband's interest in a partnership.  As to the

awards of child and spousal support, she suggests that the court erroneously calculated the

---

[2] The record was sealed by the circuit court pursuant to Code § 20-124.  Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by the wife.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1, 805 S.E.2d 775, 777 n.1 (2017).

husband's income and improperly failed to credit her for certain expenses. Finally, each party seeks an award of attorney's fees and costs on appeal.

## A. After-Discovered Evidence Claim

After the court heard evidence and issued a letter opinion but before it entered the final order, the wife filed a motion to rehear and reconsider. In that motion she asked the court to "consider [the husband's class action lawsuit] claim, information of which was not provided by [the husband] as being close to finalization, including information [concerning how much] he would potentially be entitled" to receive. She suggested that "the [claim] award" was relevant to determining spousal support and equitable distribution.

At the subsequent hearing on the motion, the wife represented that during discovery in 2015, the husband denied that he anticipated receiving any benefit from the class action litigation. The wife further represented that after November 2016, she "found paperwork at the marital residence" indicating that the husband was in fact "a part of the class" in the "ongoing . . . litigation [that] has recently been resolved" and "he is anticipated to receive" a substantial sum from the settlement. Counsel told the court, "*I have documents right in front [of] me,*" and then he purported to read from them, stating, "[S]hould the Settlement Program Administration agree with everything, then we estimate that they will offer you [a specified sum]." (Emphasis added). Counsel did not proffer the documents for the record. The husband's attorney asserted that the husband had not received any medical treatment relating to the claim and was likely ineligible for any recovery. The court's subsequent order denying the wife's motion to rehear and reconsider included an implicit denial of her motion for an evidentiary hearing on the husband's class action lawsuit claim.

The wife argues that the court erred in denying her motion for an additional evidentiary hearing based on after-discovered evidence. The husband challenges the wife's assignment of

error on procedural grounds. He contends that she failed both to preserve her claim for appeal and to proffer the necessary evidence to permit review on appeal.

The record clearly establishes that the wife preserved the assignment of error for appeal. In her written motion and related oral argument, she asked the circuit court to hear evidence on the class action lawsuit claim as it related to equitable distribution and spousal support. Additionally, she did so while the court still had jurisdiction over the equitable distribution proceeding. See, e.g., Bajgain v. Bajgain, 64 Va. App. 439, 452, 769 S.E.2d 267, 273 (2015) (discussing the purposes of Rule 5A:18 and holding that a wife's "written and oral arguments" preserved her claims).

The wife did not, however, proffer adequate information in the circuit court to permit this Court to determine whether the failure to grant her request for an additional hearing was error. In order for after-discovered evidence to be admissible, the record must establish that:

> (1) the evidence [was] discovered after the record was closed; (2) it could not have been obtained prior to the closing of the record through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative, or collateral; and (4) it is material, and as such, should produce an opposite result.

Joynes v. Payne, 36 Va. App. 401, 418, 551 S.E.2d 10, 18 (2001). The party seeking to reopen the record bears the burden of proof. Williams v. People's Life Ins. Co., 19 Va. App. 530, 533, 452 S.E.2d 881, 883 (1995). Whether to grant such a motion rests within the sound discretion of the circuit court. Shooltz v. Shooltz, 27 Va. App. 264, 269, 498 S.E.2d 437, 439 (1998).

Significantly, when the circuit court denies such a motion, "the aggrieved party must make a proper proffer of the [evidence] to preserve the ruling for appellate review." Klein v. Klein, 11 Va. App. 155, 160, 396 S.E.2d 866, 869 (1990). Such a proffer "may consist of a unilateral representation of counsel, *if unchallenged*, or a mutual stipulation of the proffered

[evidence]. Absent such representation of counsel, or stipulation, the ruling will not be considered on appeal." Id. (emphasis added).

Here, the wife sought to offer evidence that the husband had received or would receive a share of the proceeds from a class action lawsuit. She represented that she had "paperwork" indicating that the husband was a participant in the lawsuit and that the suit had been resolved. However, despite the observation of the wife's counsel that he "*ha[d the] documents right in front [of him]*," he did not proffer those documents to the court for purposes of trial or appeal, and the husband clearly did not stipulate to the wife's representations regarding the lawsuit. (Emphasis added). Additionally, even the wife did not represent that the husband would definitely receive a recovery from the lawsuit. Her attorney represented at most that the husband "is *anticipated* to receive" a specified sum from the settlement. (Emphasis added). Counsel purported to read from the unidentified documents, and those statements used similarly vague language, including "*should* the Settlement Program Administration agree with everything," and then merely an "*estimat[ion]*" of the amount that the husband could be offered. (Emphases added). Based on the equivocal nature of counsel's statements and his failure to proffer the documents for the record, the wife failed to prove the fourth prong of the test—that the evidence was "material" and likely to "produce [a different] result" in the equitable distribution and support proceedings.[3] See Joynes, 36 Va. App. at 418, 551 S.E.2d at 18.

The wife's proffer was inadequate to meet the requirements for offering after-discovered evidence. Accordingly, we affirm on this issue.[4]

---

[3] In light of this conclusion, we do not consider whether the proffer was sufficient to meet the other three prongs of the test.

[4] Due to the inadequacy of the wife's proffer in the circuit court, we do not consider the husband's assertion that Rule 5A:20(e) bars our consideration of this assignment of error because the wife failed to cite any pertinent legal authority.

B. Equitable Distribution

The wife challenges the circuit court's failure to classify and value the husband's interest in Burnette, Henderson & Burr (BHB) Development, a real estate partnership.

Undisputed evidence established that the husband had a 40% interest in the partnership. The primary asset of the business was a single piece of real estate, located at 1207 School Street in Richmond. The asset disclosure lists filed by both parties classified his interest in BHB Development as marital. The husband testified that his interest had no value because the real estate was encumbered by a loan in an amount greater than the value of BHB.[5] The wife introduced a December 31, 2015 balance sheet for the 1207 School Street LLC, the single piece of real property owned by BHB.[6] That balance sheet listed "total capital" for the company of $400,150.80. The wife argued that this was the value of the company.

The circuit court expressly classified BHB's checking account as marital and assigned it the value of $33 placed on it by the parties. Regarding the "School Street property" owned by BHB, the court found that the balance sheet did not reflect the fair market value of the property, and it ruled that it "was not provided sufficient evidence" to determine the value of that property.

On appeal, the wife argues that the circuit court erred by failing to classify the husband's interest in BHB as marital property and to value the marital interest based on approximately 40% of the "total capital" figure of $400,150.80 on the balance sheet.

Code § 20-107.3 requires the circuit court, at the request of divorcing parties, to classify property owned by the parties separately or jointly as separate or marital for purposes of

---

[5] The husband's exhibits showed a 2014 City of Richmond assessment of $812,000 and a lien of $1,227,753.10, which would yield a value of zero.

[6] The wife asked the court to use an alternate valuation date because the balance sheet was less than one year old at the time of the evidentiary hearing and a newer balance sheet was not available. See Code § 20-107.3(A) (permitting the trial court to use an alternate valuation date upon request "for good cause shown").

equitable distribution. Code § 20-107.3(A). It further requires the court to value the property and distribute the value of property that it classifies as marital. See id.; Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995). On appeal, a circuit court's "equitable distribution award will not be overturned" absent "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." Wiencko v. Takayama, 62 Va. App. 217, 229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)). Further, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has discretion to accept or reject any of [it]." Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).

The wife bore the burden of proof on the disputed issues because she requested the equitable distribution and sought to share in the husband's interest in BHB. Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987). Although a court "may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record," it is the duty of the court in the first instance to determine whether the record contains "credible evidence of value." See id. "[W]here the corporation is a real estate holding company," valuation based upon the fair market value of "the corporation's net assets has gained wide acceptance." Bosserman v. Bosserman, 9 Va. App. 1, 8-9, 384 S.E.2d 104, 109 (1989).

The wife contends that the court erroneously failed to classify the husband's 40% interest in the property owned by BHB. We agree. The court's letter opinion is silent regarding classification, and the final decree specifically states that the court "was unable to classify . . . this asset." It reached this conclusion despite classifying BHB's checking account as marital.

Further, the record indicates that the issue of classification was not in dispute because the parties agreed that the husband's interest in BHB as a whole was marital.

Nevertheless, we hold that the court's error in failing to classify this asset as marital was harmless because the record, discussed *infra*, supports the court's finding that the parties presented insufficient evidence to permit it to value the asset. See Milam v. Milam, 65 Va. App. 439, 459, 778 S.E.2d 535, 544 (2015) (recognizing that Code § 8.01-678 requires harmless error review "in *all* cases" (quoting Tynes v. Commonwealth, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006))). Accordingly, the circuit court's failure to classify this asset did not affect the equitable distribution. Cf. McDavid v. McDavid, 19 Va. App. 406, 408-09, 413, 451 S.E.2d 713, 715, 718 (1994) (applying harmless error analysis to affirm despite the court's failure to value property that it classified as separate because the lack of evidence of value of separate property had no impact on the equitable distribution).

Regarding valuation, the wife argues that the court could determine the husband's 40% interest in BHB Development from the "total capital" figure on the balance sheet for 1207 School Street LLC. However, she presented no evidence to the court to indicate that this figure was an acceptable method for proving value for purposes of equitable distribution. See Bowers, 4 Va. App. at 619-20, 359 S.E.2d at 552 (upholding the circuit court's refusal to value the husband's pension where the wife chose not to hire an expert and relied on her attorney's computation of present value). The wife accurately asserts that an owner is qualified to give his opinion of the value of property he owns. See, e.g., Haynes v. Glenn, 197 Va. 746, 750-51, 91 S.E.2d 433, 436-37 (1956). She points to the husband's "testimony" about the "total capital" figure on the balance sheet. Her reliance on the record is misplaced. The husband's only testimony about that figure was to read it aloud on cross-examination at the request of the wife's counsel. The wife's counsel did not ask the husband about the significance of that figure in

relation to the value of 1207 School Street LLC or BHB Development.  In fact, when the husband's attorney objected to the line of questioning, the wife's counsel specifically stated, "I'm not asking for [the husband's] opinion of [the figure], Judge."

Although the circuit court rejected the husband's express testimony that the business had no value, this rejection did not compel the court to accept the wife's evidence as proof of value. No evidence in the record reflects how or why the 2015 balance sheet relied upon by the wife was prepared.  See generally 2 Brett R. Turner, Equitable Distribution in Virginia § 7:16, at 693-94 (3d ed. 2005) (noting that a financial statement accompanying a loan application may not be worthy of weight in a divorce case because such statements "commonly make optimistic assumptions about the value of the maker's assets" and are "realistically . . . different . . . than value for the purpose of divorce").  Additionally, to the extent that the evidence might support an inference that the balance sheet relied upon a fair market value for the real property, that value would have been as of February 2014, more than two-and-a-half years prior to the November 2016 evidentiary hearing.[7]  Accordingly, the staleness of this valuation provided the court with another reason to reject it.

Consequently, we hold that the circuit court did not abuse its discretion in ruling that the record contained insufficient evidence to prove the value of the husband's interest in BHB Development.

### C.  Child and Spousal Support

The wife also challenges the circuit court's child and spousal support awards.  She contends that the court erroneously calculated the husband's income and failed, when it imputed income to her, to give her proper credit for related expenses.

---

[7] The husband admitted that an appraisal from February 2014 valued the property at $1.6 million.  Subtracting the lien of $1,227,753.10 would yield a value of about $372,000.

Settled principles provide that the incomes of both spouses must be calculated before a court may determine spousal and child support obligations. See Code §§ 20-107.1(E)(1), -108.2(B), (C). A court's award of child or spousal support will be reversed only for an abuse of discretion. See, e.g., deCamp v. deCamp, 64 Va. App. 137, 144, 765 S.E.2d 863, 867 (2014).

### 1. The Husband's Income

The wife suggests that the court erred by failing to include in the husband's income significant sums of cash that he allegedly received for professional appearance fees. She argues that she testified, "unchallenged and unrebutted," that he had unreported annual cash income of "at least $100,000 to $125,000." She offered photos of cash that the husband stored at the marital residence and claimed that it was "not likely reported as income." The husband, however, testified that he reported all such sums on his income tax returns and did not receive any undisclosed cash. The court found that the husband's income was the sum shown on his income and expense statement.

"It is well established that the trier of fact ascertains a witness' credibility" and "determines the weight to be given to [his or her] testimony." Layman, 62 Va. App. at 137, 742 S.E.2d at 891 (quoting Street, 25 Va. App. at 387, 488 S.E.2d at 668). The trier of fact is free to accept some parts of a witness' testimony and reject others parts. See, e.g., id.

In light of these principles, the record fails to establish that the court abused its discretion in the way that it calculated the husband's income. The circuit court was entitled to accept the husband's testimony that he included all professional appearance fees on his income tax returns and that his income was as he reported it on his income and expense statement. See id. By accepting the income figures that the husband provided, the court implicitly rejected the wife's testimony that he failed to report all income received from appearance fees. This finding was not plainly wrong, especially in light of the imprecise nature of the wife's testimony.

Consequently, we hold that the circuit court did not err in calculating the husband's income for purposes of spousal and child support.

## 2. *The Wife's Imputed Income and Child-Care Expenses*

The wife argues that the court erred when it imputed income to her for purposes of calculating child and spousal support because it failed to deduct her work-related daycare costs. She does not contest the imputation of income itself but asserts that the imputation should have been accompanied by a credit for daycare costs she would incur to produce that income.

Virginia's statutory scheme addresses daycare expenses necessary to produce income by providing that "[a]ny child-care costs incurred on behalf of the child or children due to employment of the custodial parent shall be added to the basic child support obligation."[8] See Code § 20-108.2(F); Prizzia v. Prizzia, 58 Va. App. 137, 171, 707 S.E.2d 461, 477 (2011). Similar, albeit more discretionary, principles apply to the calculation of spousal support, requiring the court to consider, among other factors, the "obligations, needs and financial resources of the parties." Code § 20-107.1(E)(1); see Code § 20-107.1(E)(5), (13); cf. Floyd v. Floyd, 17 Va. App. 222, 231, 436 S.E.2d 457, 462-63 (1993) (considering that a mother would incur child-care costs if she accepted employment outside the home in opting not to impute income to her for purposes of calculating spousal support).

The wife testified that she would incur $1,000 to $1,500 per month in child-care costs for both children if she returned to full-time employment. She argues that the husband did not contest this figure and, accordingly, that the circuit court erred by not including it in calculating support. The wife, however, fails to acknowledge the express statutory provision requiring that, "[w]here appropriate," the court calculating child support "shall consider the willingness and

---

[8] The parties agreed to split custody equally but to proceed under the child support guidelines as if the wife was the custodial parent.

availability of the noncustodial parent to provide child care personally in determining whether child-care costs are necessary or excessive." Code § 20-108.2(F). We also see no reason to prevent the circuit court, in the exercise of its discretion, from considering such willingness and availability in determining the wife's income and expenses for the purpose of calculating spousal support. If the court determines that the husband is willing and able to provide necessary childcare, the court does not abuse its discretion in considering this fact in weighing the "obligations, needs and financial resources of the parties" for purposes of spousal support. See Code § 20-107.1(E)(1). In light of these principles, we conclude that the circuit court's ruling was not an abuse of discretion.

The evidence established that at the time of the evidentiary hearing, the wife's part-time job provided her with the flexibility both to work from home and to take her younger child to the office with her on occasion as needed. Further, the evidence established that although the parties' daughter was ten years old, their son was fourteen at the time of the evidentiary hearing and almost fifteen at the time of the hearing on the motions to reconsider and rehear. Additionally, the husband testified that he had "complete control" of his schedule. He said that he could turn down promotional work in order to care for the children and would be available any evenings necessary if the wife obtained the job identified by the vocational expert.

The circuit court found simply that "[t]here are no work-related childcare costs due to [the wife's] control over her current and anticipated work schedule" and "the nature of [the husband's] . . . career" moving forward. The court, as the finder of fact, was entitled to credit the husband's testimony that he would be available to provide childcare as needed, a consideration expressly permitted under the applicable child support statute and implicitly allowed by the spousal support statute. See Code § 20-107.1(E)(1), (5), (13); Code § 20-108.2(F); see also Layman, 62 Va. App. at 137, 742 S.E.2d at 891 (recognizing the circuit court's ability to assess

witness credibility). Further supporting the court's ruling was that the parties' fourteen-year-old son was old enough to help provide care for his ten-year-old sister.

Consequently, we hold that the court's decision not to provide the wife with a credit for child-care expenses for the purpose of calculating child and spousal support was not error.[9]

## D. Attorney's Fees and Costs on Appeal

Each party seeks an award of attorney's fees and costs on appeal. Pursuant to Rule 5A:30, in specified cases in which attorney's fees are recoverable under Title 20 of the Code of Virginia, the Court of Appeals "may award" some or all of the fees requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). Whether to award fees is discretionary. See id.; Harper v. Va. Dep't of Tax'n, 250 Va. 184, 194, 462 S.E.2d 892, 898 (1995). In determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was "fairly debatable" or frivolous, whether either party "generated unnecessary delay or expense" in pursuing his or her interests, and whether other reasons exist to support an award of attorney's fees and costs. See Rule 5A:30(b)(3), (4); Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008); Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In addition, Rule 5A:30(b)(3) specifically directs this Court to "consider all the equities of the case."

Considering all the factors set out in Rule 5A:30 and the applicable case law, we see no reason that either the husband or the wife should be required to pay the other party's attorney's fees and costs in this case. Accordingly, in the exercise of our discretion, we decline to make an

---

[9] The wife remains free to seek an adjustment in support if her work schedule or the husband's availability changes in a fashion that does not permit the parties to provide all necessary care for the children. See, e.g., Kaplan v. Kaplan, 21 Va. App. 542, 547, 466 S.E.2d 111, 113 (1996) (child support); Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (spousal support).

award of attorney's fees and costs to either party.  See, e.g., <u>Wright v. Wright</u>, 61 Va. App. 432, 470, 737 S.E.2d 519, 537-38 (2013).

III.  CONCLUSION

We hold that the record fails to establish that the circuit court abused its discretion in any of the ways claimed by the wife.  First, she waived her right to review of her after-discovered evidence claim on the merits due to the lack of an adequate proffer.  Second, the circuit court did not commit reversible error with regard to classification and valuation of BHB Development because the record supports its finding that the wife failed to present adequate evidence of value, rendering harmless its failure to classify the husband's interest in the property as marital.  Third, the record supports the court's findings regarding the husband's income from professional appearance fees and the wife's lack of entitlement to a credit for child-care expenses.  Finally, we decline each party's request for an award of attorney's fees and costs in this appeal.

<u>Affirmed.</u>